OPINION OF THE COURT
David Stadtmauer, J.
Defendant moves for a mistrial on the grounds that the testimony of the complaining witness in the language of Krio did not require the services of an interpreter, that the interpreter relayed the testimony inaccurately, and that Krio, in any event, is not a language.
The defendant on trial is charged in a nine-count indictment with attempted murder in the second degree, attempted assault in the first degree, assault in the second degree, and related crimes. The two complainants, Gerald Sambolah and Edwin Sambolah, immigrants from Sierra Leone, were allegedly victims of a slashing with a box cutter.
Although Edwin Sambolah is fluent in English, his brother Gerald, who arrived more recently, is not. Rather, Gerald Sam *435 bolah speaks Krio — a language peculiar to Sierra Leone. Therefore, he requested the assistance of a Krio interpreter, and one was obtained after some difficulty. The resulting testimony gave rise to much controversy during the trial and ultimately led to this motion for a mistrial.
Defense counsel objected that Krio “is not some kind of language that one * * * goes to a university and studies” and that it is “nothing more than a Patois [and] * * * English with a bad accent” (see minutes at 190). In addition, defense counsel raised continual objections to the interpreter’s translations of the witness’s remarks. He argued that certain words of the witness were recognizable as English, that the interpreter merely paraphrased the English words, and that such paraphrasing was incorrect. As defense counsel stated: “When we get to serious business, he [the interpreter] will summarize any way he pleases” (minutes at 182). In counsel’s view, no interpreter was necessary, and the jury should have been instructed that they could consider Gerald Sambolah’s testimony as they heard it from complainant’s mouth and not as translated by the interpreter. (Cf. People v Sanchez, 185 AD2d 331 [2d Dept 1992], lv denied 80 NY2d 934 [1992] [dealing with a Spanish-speaking juror’s disagreement with a Spanish-language court interpreter’s translation of testimony].)
The problem in this case is that Krio, in light of the history of Sierra Leone, contains many English words, albeit in combination with some native expressions. Thus, in listening to Gerald Sambolah’s testimony in court, it was apparent that much, though by no means all, of what he said seemed recognizable as English. Indeed, as noted by the American journalist and author Bill Bryson, in The Mother Tongue: English & How It Got that Way (at 180 [William Morrow & Co. 1990]), in listening to “the many English-based Creoles in the world, such as Krio, spoken in Sierra Leone,” there is the “thorn [y] problem of deciding whether a person is speaking English or something that is like English but is really a quite separate language.”
Initially, it should be noted that the rules and procedures regarding the use of interpreters at trial are fairly straightforward (see, generally, Judiciary Law art 12). If a party or witness needs an interpreter to understand the proceedings or the questions propounded, and the court and jury need the interpreter to understand the answers given by a witness who does not speak English, then the clerk of the court — on request — will arrange to have an official interpreter available. *436 The interpreter may be on staff — as a salaried court employee if the language in question is in fairly common use — or, if such an official interpreter is not available, “the court may appoint an interpreter to act temporarily in such court.” (Judiciary Law § 387.)
In dealing with the question of whether Krio is in fact a language separate and distinct from English, the court is compelled to examine the nature of Krio and how it evolved into a language in the context of the history of Sierra Leone.
The Republic of Sierra Leone is located in west central Africa and has an estimated population of over 5,230,000. In 1787, Freetown, the capital city, “was founded by the British Sierra Leone Co. as a haven for freed slaves. The settlement was populated by former slaves from Great Britain, North America, and the Caribbean, and later by slaves liberated from slave trading ships by the British navy.” (New York Times Almanac-2003, at 655 [John W. Wright ed Penguin].) Great Britain colonized Freetown in 1808 and a British protectorate was established over the interior in 1896. In 1961, independence was achieved and Sierra Leone became a republic. In view of its history, English was always spoken in Sierra Leone, but indigenous tongues persisted. Thus, Krio evolved as an amalgam of English with non-English expressions.
According to the Oxford Companion to the English Language (at 565 [Tom McArthur ed Oxford University Press 1992]), Krio is a mid-twentieth century adaptation of Creole, spoken as a mother tongue by some 250,000 people in the vicinity of Freetown. Many other Sierra Leoneans speak it as a second language. It has a dictionary (A Krio-English Dictionary, as edited by Clifford N. Fyle and Eldred D. Jones [Oxford University Press 1980]) and has been used for translating Shakespearean literature, parts of the Bible, and for plays, poems and prose.
In sociolinguistic terms, Krio is a derivative of Creole English and had its source in native contact with speakers of English. Historically, it became a makeshift form of speech called Pidgin. Eventually, it evolved into a distinct language of its own. It should be noted that the term “Creole” does not refer to a specific language but is a general term derived from Latin Creare/Creatum, meaning to beget. The implication is that Creole or Pidgin English was the source which evolved into a new or different language called Krio. Other such Creole languages include, for example, Aku in Gambia and Papiamento in the Netherlands Antilles (Oxford Companion, supra *437 at 270-271). Although the official language of Sierra Leone remains English, the lingua franca is Krio which is a language of the courts, and also a language of instruction throughout the country. (See, generally, The New Encyclopedia Britannica [15th ed]; Macropedia, vols 22, 29 [1985].)
The court finds that Krio, although related to English, is a separate and distinct language that cannot be readily understood without an interpreter. Accordingly, in order to avoid confusion and double answers in the record — one from the interpreter and the other a jumbled mixture of Krio and English from the witness, the court directed that the usual procedure involving interpreters be followed. The attorney would ask a question in English. The court interpreter would then ask that question of the witness in Krio. The witness would respond in Krio, and the interpreter would translate the witness’s answer into English. The court reporter was directed to transcribe only what the interpreter said. Furthermore, the court instructed the jury that only the official interpreter’s translation was the witness’s testimonial evidence in this case.
This procedure was necessary to assure a clear and orderly process. To hold otherwise would have invited confusion and argument with respect to every question asked of Gerald Sambolah and every answer given. The court has a responsibility to assure that the jury is provided with orderly testimony that is understandable — and to leave the jury to its own devices in a case such as this without an interpreter could have deprived defendant of a fair trial, irrespective of defense counsel’s opinion to the contrary. (See Matter of Vladimir M., 206 AD2d 482 [1994].)
The motion for a mistrial is denied.